848 F.2d 191
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jacob JONIEC, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1248.
 United States Court of Appeals, Sixth Circuit.
 May 16, 1988.
 
 Before MILBURN and BOGGS, Circuit Judges, and ANN ALDRICH, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Jacob Joniec (Joniec) appeals the district court order affirming the Secretary's final decision that, while unable to perform his past relevant work, Joniec had the residual functional capacity to perform sedentary work involving the operation of a cash register, and under Sec. 223(d) of the Social Security Act (SSA) was thus not disabled, and therefore not entitled to disability benefits. After reviewing the parties' briefs and relevant portions of the record, we affirm.
 
 
 2
 * Joniec was born on August 24, 1924. He has a ninth grade education. From 1958 to 1975, he was employed as a bartender. He was last insured on June 30, 1980. On July 23, 1975, Joniec filed his SSA claim alleging disability because of diabetes and problems with his legs and gall bladder. After initial denial and after reconsideration, an ALJ found that Joniec was not disabled. Joniec sought review in the district court, which remanded the case for the purpose of getting testimony from a vocational expert.
 
 
 3
 On May 27, 1982, the Appeals Council vacated the earlier ALJ decision, and remanded the case for a new hearing. At that hearing, Mr. Krugman, a vocational expert, testified that Joniec had no transferable skills from his previous work. Nevertheless, on November 17, 1982, the ALJ issued a recommended decision finding Joniec not disabled. On March 17, 1983, the Appeals Council declined to review the ALJ's decision.
 
 
 4
 On May 13, 1983, Joniec sought review of the Secretary's final decision in district court. Because the Secretary failed to file an answer in district court, the court remanded the case to the Secretary.
 
 
 5
 On January 30, 1985, the Appeals Council remanded the case with specific instructions regarding completion of the record. The ALJ conducted a further hearing, and issued a recommended decision finding that Joniec was not disabled. Dr. Brooks, a vocational expert, testified that Joniec had acquired the transferable skill of using a cash register. With minor modification, the Appeals Council adopted the recommended decision.
 
 
 6
 Subsequently, Joniec's case was reinstated on the district court docket, and was assigned to a magistrate. The magistrate recommended that the court grant the Secretary's motion for summary judgment. The district court reviewed the matter in its entirety, and granted the Secretary's motion for summary judgment.
 
 II
 
 7
 First, Joniec argues that the Secretary failed to meet his burden of establishing with substantial evidence in the record that the claimant can engage in substantial gainful employment of a sedentary nature.
 
 
 8
 Joniec recognizes that after the Secretary determined that Joniec was unable to perform his past relevant work, the burden shifted to the Secretary to show that Joniec had the residual functional capacity for performing any substantial gainful employment. Richardson v. Secretary of Health & Human Services, 735 F.2d 962, 964 (6th Cir.1984) (per curiam). However, Joniec argues that "[a]n evaluation of all of the evidence and testimony contained in the trial records clearly illustrates that the Secretary failed to meet its burden of proof." We disagree.
 
 A. Subjective Complaint of Pain Argument
 
 9
 From Joniec's point of view, "[i]t is clear ... that the Secretary completely failed to consider Mr. Joniec's subjective complaints of pain in evaluating his claim for disability benefits in the testimony." Joniec enumerated the sources of his pain: (1) war injuries; (2) gouty arthritis; (3) osteoarthritis of his neck, lumbar and ischial areas.
 
 
 10
 On the other hand, the Secretary points out that under Duncan v. Secretary of Health & Human Services, 801 F.2d 847, 853 (6th Cir.1986) objective evidence in the record before the ALJ at the time of decision must confirm the severity of the pain a claimant alleges. The Duncan court stated that "[f]irst, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain." Id. at 853.
 
 
 11
 In our view, the record is devoid of objective evidence of disabling pain arising from war injuries; indeed, the record shows that Joniec worked for thirty years after the alleged war injuries. As to the gouty arthritis and the osteoarthritis of his neck, lumbar and ischial areas, the record likewise is devoid of the supporting objective evidence necessary under Duncan. The ALJ did consider the complaints of pain, but found them to lack the necessary foundation required by Duncan.
 
 
 12
 As the Secretary correctly points out, the record shows that before June 30, 1980 Joniec had virtually no complaints of pain in his right foot, spine or hips. The Veterans Administration Report reveals that on December 20, 1979, Joniec's sole complaints were occasional dizziness and sexual dysfunction. The last medical examination prior to expiration of insured status made no mention of musculoskeletal pain. The record shows, moreover, that the first mention of any complaint of disabling pain is on June 25, 1981, a year after expiration of insured status. Contrary to Joniec's assertions on appeal, the record indicates that the alleged pain had its origin in 1981--confirmed, in our view, on March 11, 1982, when Joniec told a physician that he had been experiencing pain in his hips for at least one year.
 
 
 13
 The Secretary argues persuasively that the "objective medical record negates any claim that the plaintiff's musculoskeletal impairments are of a severity that could be expected to produce disabling pain." The Secretary bases this argument on the following: (1) normal condition in the extremities found in two physical examinations; (2) motor, sensory, and reflex examinations repeatedly showed negative results; (3) X-rays of the right foot, "which should have shown the severity of his [alleged] war injury," demonstrated minimal arthritic changes; (4) uric acid laboratory test, "which should have revealed the presence of hyperuremia," was within normal range.
 
 B. "Objective Facts" Argument
 
 14
 Joniec next argues that the "objective medical facts" clearly demonstrate the Secretary's errors. He relies on a Veterans Administration classification dated August 16, 1976, finding Joniec "permanently and totally disabled as a result of hypertension, gouty arthritis, adult onset diabetes, chronic cholecystitis, the latter illness requiring gallbladder removal, hypertriglyceridemia and coronary heart disease."
 
 
 15
 However, under McCann v. Califano, 621 F.2d 829, 831 (6th Cir.1980), and Patrick v. Finch, 312 F.Supp. 121, 127 (E.D.Ky.1970), a determination by another government agency on disability under a different program is not binding on the Social Security Administration. The Secretary further points out that Mr. Tuttle, who made the determination, did not represent himself as a physician.
 
 
 16
 More fundamentally however, the record shows no documented disabling heart condition during the period for which he was insured. Joniec cites nothing in the record substantiating any claim of disabling heart condition. Indeed, Joniec's own doctors indicated that his vital signs were stable, and his heartbeat was regular. Evidence in the record indicates that Joniec's heart was of normal size and contour, and had no murmurs or gallops. Any pain that Joniec experienced was transitory by Joniec's own admission.
 
 
 17
 Moreover, any problems with high blood pressure would appear to have been caused by Joniec's failure to take medication faithfully. While the record shows high blood pressure readings while Joniec was insured, those readings occurred during unusual stress, i.e., surgery; possible transitory ischemic attack; unusual anxiety. The Secretary correctly maintains that the majority of readings, however, showed diastolic pressures of 80 or less, citing the hearing transcript. The Secretary's contentions here remain unrefuted.
 
 
 18
 Joniec next argues that the record shows the existence of disabling dizziness resulting from hypertension. The Secretary argues, however, that the record belies this claim. Any dizziness occurring before the expiration of insured status would seem to have been caused by medical preparation for brain scan testing, and by the blood pressure medication Joniec was taking at the time.
 
 
 19
 The record likewise fails to substantiate Joniec's claim that gouty arthritis, adult onset diabetes, chronic cholecystitis, or any illness requiring gallbladder removal, or hypertriglyceridemia, taken individually or in combination, could cause disabling pain.
 
 
 20
 Joniec next argues that the record establishes that he had had a stroke in April 1980, underwent carotid artery surgery, and double by-pass surgery. First, the Secretary notes that the "record fails to substantiate the plaintiff's claim that he suffered a stroke." The diagnosis was a "possible transient ischemic attack." Second, the surgery on the carotid artery, and the double by-pass surgery were both subsequent to the last date of insured status, June 30, 1980. Joniec's need for vascular surgery did not become apparent until December 2, 1982-two and a half years after the expiration of insured status on June 30, 1980.
 
 C. Treating Physician Opinion Argument
 
 21
 Finally, Joniec argues that the Secretary failed to consider properly the findings of treating physicians Drs. Das and Yzansky. In Joniec's view, both doctors have showed conclusively that Joniec "suffers from hypertholesterolemia (sic), hypertension and diabetes, and that the claimant was on the verge of having a heart attack." Jones further argues that the Secretary gave undue weight to testimony from Dr. Lewis who neither treated nor examined Joniec.
 
 
 22
 The Secretary recognizes that under Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987), the opinions of treating physicians, if supported by sufficient medical data, are generally entitled to deference. The Secretary points out, however, that while the opinions of treating physicians are entitled to significant weight, they must be supported by objective evidence demonstrating disabling effect. We disagree with Joniec that the findings of the treating physicians " 'clearly indicate disability.' "
 
 
 23
 Under Gist v. Secretary of Health & Human Services, 736 F.2d 352, 358 (6th Cir.1984), the Secretary argues that the law is clear that a finding of disability may not be based upon the diagnosis of a condition in the absence of evidence of disabling effect. The Secretary maintains that the analyses of Drs. Das and Yzansky were merely a prediction of what might happen to Joniec. Dr. Yzansky's report revealed nothing which would indicate that Joniec was disabled. Dr. Das's report merely stated that Joniec "is a high risk candidate for a 'heart attack.' " Under Stille v. Weinberger, 499 F.2d 244, 247 (6th Cir.1974), a prediction by a physician that an individual will suffer medical deterioration at some future date does not warrant a finding of present disability. The Secretary further points out that time has proven Dr. Das "to be a remarkably poor forecaster of the plaintiff's medical course." Dr. Das made his pessimistic appraisal of Mr. Joniec's prognosis on October 8, 1976, and there is no indication that the plaintiff, in the course of the intervening decade, has suffered congestive heart failure, cardiac arrest, myocardial infarction, coronary thrombosis, or any other condition which might fall within the rubric of the generic phrase "heart attack."
 
 
 24
 Nothing in the record suggests that the ALJ's reliance on Dr. Lewis's assessment of the medical evidence in the record was in error. The ALJ stated that Dr. Lewis "upon consideration of only the medical evidence" rendered "his opinion that the claimant had the residual functional capacity for both light and sedentary work on or prior to June 30, 1980."
 
 II
 
 25
 Second, Joniec maintains that the district court erred in its assessment of the ALJ decision because it failed to recognize that Joniec had no "transferable skills" as defined in the vocational guidelines.
 
 
 26
 Because Joniec attained the age of 55 before expiration of insured status, the applicable vocational rule is Rule 201.03, 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 1. (1987). As the Secretary points out, the rule applies to individuals of advanced age with the residual functional capacity for sedentary work, 20 C.F.R. Sec. 404.1567(a) (1987), a limited education, 20 C.F.R. Sec. 404.1564(b)(3), and skills transferable to other work, 20 C.F.R. Sec. 404.1568(d) (1987). The rule mandates, in Joniec's circumstances, a finding of not disabled.
 
 
 27
 Joniec essentially argues that the Secretary erred in applying the Medical-Vocational Guidelines because no substantial evidence in the record supports the Secretary's conclusion that Joniec possessed any skills from his previous work which would be transferable to sedentary work.
 
 
 28
 In our view, Joniec's argument is undermined by his heavy reliance on vocational expert testimony from Mr. Krugman at the 1982 hearing. Krugman testified that Joniec's employment experience did not provide him with any special skills or experience. Joniec argues that his limited education (9th grade) and advanced age together with Krugman's testimony should yield a finding of disability.
 
 
 29
 However, Dr. Brooks's testimony at the 1985 hearing indicated that Joniec's job as a bartender had required him to use a cash register, and make change for customers. Dr. Brooks testified that therefore Joniec had acquired the transferable skill of using a cash register. Additionally, this job gave Joniec the skills necessary for dealing with the general public. At the time Joniec's insured status ended in 1980, computerized cash registers had not come into "full blown use," and Dr. Brooks suggested that only minimal training was necessary in the use of other noncomputerized cash registers. Dr. Brooks therefore testified that Joniec would be able to perform a sedentary cashier's job with minimal vocational adjustment.
 
 
 30
 In our view, the operation of a cash register would be analagous to the operation of a typewriter found to be a transferable skill in Ellington v. Secretary of Health & Human Services, 738 F.2d 159, 161 (6th Cir.1984). Indeed, in Siterlet v. Secretary of Health & Human Services, 823 F.2d 918, 922 (6th Cir.1987) (per curiam) this Circuit held that the operation of a cash register could "constitute [a skill] acquired in [a claimant's] past relevant work."
 
 
 31
 Moreover, Krugman's vocational evaluation of Joniec is marred by undue reliance on Joniec's age, immaterial to transferable skills analysis, and more fundamentally, the failure to consider that the operation of a cash register could constitute a transferable skill.
 
 
 32
 Therefore, the Secretary's finding that Joniec is not disabled within the meaning of the SSA is AFFIRMED.
 
 
 
 *
 The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation